# H. A. Garrett *v.* Mississippi and Alabama Rail Road Company *et al.*

When any description of writing, evidencing liability on the part of the makers, whether it be commercial paper, a specialty, or other form of legal obligation, has become extinguished or discharged by subsequent events, as by payment or otherwise, so that the writing has become *functus officio,* but where its existence in an uncancelled state might subject the maker to vexatious litigation at a distance of time, when the evidence of such extinguishment or discharge may have been lost, or so obscured as to render the parties less able to repel the claim ; in all these cases a court of equity will extend its preventive justice to call out of existence an instrument which ought not to be used and enforced, or where it is against conscience to permit the party holding it to enforce it.

Although a plaintiff in equity cannot demand by one bill several matters of different natures against several defendants, yet when one general right is claimed by the bill, although the defendants may have separate and distinct rights, a demurrer will not hold.

The facts, as set forth in this bill, are as follows.

In the year 1837, E. R. Anderson, since deceased, applied to complainant to become security to a note for $700 or thereabouts, to be discounted by the Mississippi and Alabama Rail Road Company; and at another time in said year he also applied to complainant to become security to a note for $2,000, to be discounted by the same. Both of these notes, the first falling due the 15th of January, 1838, the other due the 5th of April, 1838, were signed by complainant : the last note was signed in blank, because Anderson desired that it might be so to enable him to get $2,000 nett upon the note, and did not know what would be the amount for which to fill up the note to yield that sum, according to the mode of discount adopted by the bank; and Anderson assured complainant that it should not be filled up to nett more than $2,000. Complainant also, with Anderson, about the same time, signed a note for $3,000, as security for Terrell, which fell due on the 1st of March, 1838, and was discounted by the company. Complainant heard nothing of these notes, and supposed they

were paid, until sometime in November, 1838, when he was informed that Anderson had filled up the blank intended to be for $2,000 with the sum of $10,000. Startled by this information, complainant called upon Anderson, who admitted the fact, but stated that he had delivered to the company three hundred and fifty bales of cotton to pay the note of $700 and $10,000, and whatever balance might remain to be applied in payment of the $2,000 note; and that the bank had agreed with him, in consideration of his delivering said cotton to be shipped to Europe and sold under the sole direction and control of the bank or its agents, and the proceeds to be used by the said bank in exchange, &c. in order to procure specie for the bank; that the cotton should be sold to best advantage &c.; and that said note should remain in bank, and Anderson not be called upon to pay any balance until return of the sales of the cotton should be received. Complainant afterwards called at the bank, and learned from the officers the truth of Anderson's statement— the receipt of two hundred and sixty-seven bales of cotton, and that the accounts of their agents would most probably show the receipt of the whole—and that satisfied with this statement complainant returned home, believing he would not be troubled about the matter any more, which was so, until the death of Anderson in Texas in October, 1839; that then the directors of said company settled the matter among themselves—sold the cotton for specie—used the money and exchange for their own benefit, how or when he knows not—and so demeaned themselves as to make their own issues almost worthless; that then they declared the said notes unpaid and transferred them as collateral security, &c., and as complainant believes to prevent said notes being paid in their own currency. And that when said notes were discounted the said company adopted a mode of calculating their discounts by which they discounted at a rate greater than seven per cent. per annum—that said notes having less than twelve months to run, were intended to be discounted at seven per cent., which fraudulent practice was unknown to complainant until lately; and that the agreement of said company with Anderson to deliver the cotton for raising specie, and to let said notes lie over till accounts of the sale of the cotton was had, was made without the consent

of complainant; that by this agreement the matter was taken entirely out of the control of complainant or Anderson; that the said notes were held up till said Anderson and Terrill both became insolvent and unable to protect complainant; that if complainant had been advised after the notes became due, that he should have them to pay, he could have indemnified himself; and that the said agreement was not executed in good faith; that instead of selling the cotton soon after they had it in market, and when the proceeds of sale would have paid said notes, they held it up until the price of cotton was reduced—and instead of selling it when they could have got forty dollars per bale for it, they placed it under the control of the United States Bank of Pennsylvania or some other concern, to hold it up to answer some stock jobbing scheme unknown to complainant, by which it was retained till it became a mere drug and they were compelled to sell it at a great sacrifice; that also in some instances during the time they sold cotton for more than fifty dollars per bale; and that the complainant does not know what the cotton of said Anderson sold for, nor what amount of exchange said company is willing to give the notes credit for, and insists that the said bank is bound to allow the price which said cotton could have sold for at any time after they had it in market, and to account for both foreign and domestic exchange at the rates at which it was selling when they could have drawn upon it. And that in January, 1839, after the cotton was delivered, the said bank was willing and agreed to credit said debts at the rate of forty dollars per bale, averaging the bales at four hundred pounds weight, and to credit the foreign and domestic exchange at the current rate, which would have paid said debts, which agreement he thought had been carried into effect, till sometime after the death of said Anderson he was informed by good bank authority that since their sales had fallen off the said bank would not adhere to it; and that since he learned of the contract between said Anderson and said bank, he has taken but little interest in the matter, except to have it settled and the notes cancelled, because he considered the agreement to hold up the notes until the cotton was sold entirely released him from any liability in said note; and that anything he has done since was under the expectation that the cotton would pay the notes, and he

would thus be relieved from any legal controversy. And that since he has learned the conduct of the bank in transferring those notes, he has little faith in the kind of justice they would mete out to him in any settlement he would seek, for they have notes, cotton, money, and exchange, and all the papers in their possession; and that complainant being only security, and having no knowledge of the matter except what he has learned by chance, deems himself incompetent to contend with them, and therefore prefers bringing the matter immediately before this court. And that the note of $3,000 has been transferred to the president, directors, & co. of the Planters' Bank of Mississippi, by which it is now held. And that the said Planters' Bank held of the issues of the Brandon Bank about $20,000, to secure which she transferred to said Planters' Bank notes or bills receivable to the amount of about $200,000, including this note; that it was doubtless their intention thus to coerce the payment of that amount in good currency, instead of her own issues; and that the said bank had no power to transfer said notes. That the other two notes have been transferred to a certain Robert Crozier, for what purpose he knows not. That no person has taken out letters of administration on the estate of said Anderson.

To this bill the defendants demurred, and assigned the following causes:

1. Want of equity on the face of the bill.

2. The three notes in question are held by three different parties who have privity of interest.

3. As to the note held by the Planters' Bank, there is no equitable matter alleged.]

4. No suit has been instituted or threatened at law.

5. The complainant has a good defence at law.

6. The security has no right to the notes.

MONTGOMERY and BOYD for Planters' Bank.

On behalf of the demurrer of the Planter's Bank we offer a remark or two, leaving the other parties to defend themselves as they may be advised.

Garrett is the security with Anderson on Terrill's note for $3,000, which was made to be discounted and was discounted by

the Brandon Bank.    There are two other notes named in the bill, said to be held by Crozier, but with which the Planters' Bank has nothing to do.    In these two notes there appears to have been some fraud, and if the bill is correctly framed we hope the chancellor will grant relief to the party; but the note held by the Planters' Bank is entirely free from any difficulty.    There is no fraud averred as to that, and no part of the agreement between the Brandon Bank and Anderson related to it, but only to his own notes, which were those first named in the bill, and which alone he provided for by the cotton.    The other note, being for Terrill's benefit, was left for him to provide for.

The simple state of facts as to the Planters' Bank, is, that they have received the $3,000 note, with other securities from the Brandon Bank, to secure a debt of $200,000, which that bank owes them.

No suit has been brought on the note, but complainants think if an account is taken between the Brandon Bank and Anderson, a co-surety with him on the note, it would appear that the whole or part of said note was paid.    This would not make the note void, and if the Planters' Bank sue on it, it will be well to show the payment at law, but it is a new ground of equitable interference, to set up payment of notes not sued on, and claim a cancellation, in whole or part.

The other parties may have equitable rights, but none are pretended against the Planters' Bank.

Wm. Yerger for complainant.

This case presents a fair case for relief in equity.    The complainant has a clear right to an account from the Mississippi and Alabama Railroad Company of the sales of the cotton, and to have the proceeds credited on the notes, and the same delivered up to be cancelled, if they have been paid, as alleged in the bill. The cancellation and delivery up of void instruments is a familiar branch of equity jurisdiction, and equity will relieve even though the party might have obtained relief at law.

Owing to the complicated nature of these transactions, complainant could not defend himself at law on the $3,000 note, without an account of the sale of the cotton.    If the amount

received from the cotton was sufficient to pay all three notes, complainant had a right to have them all cancelled and delivered up. The bill alleges that the cotton was sufficient, and he had a right to an account from the bank in reference to it. Sessions *v.* Jones, decided at the January Term, 1842, of the High Court; 1 Story's Equity.

The CHANCELLOR.

This case was submitted on the demurrer of the Planters' Bank. It is said this is not a case where the court can exercise the jurisdiction of decreeing an invalid or void instrument to be delivered up. It may be laid down as a general rule, that where any description of writing, evidencing liability on the part of the maker, whether it be commercial paper, a specialty, or other form of legal obligation, has become extinguished or discharged, by subsequent events, as by payment or otherwise, so that the writing has become *functus officio,* but where its existence in an uncancelled state might subject the maker to vexatious litigation at a distance of time, when the evidence of such extinguishment or discharge may have been lost or so obscured as to render the party less able to repel the claim; in all these cases a court of equity will extend its preventive justice to call out of existence an instrument which ought not to be used or enforced, and where it is against conscience to permit the party holding it to retain it. Wynne *v.* Callander, 1 Rus. R. 293; Reed *v.* Bank of Newbury, 1 Paige R. 215; 7 Ves. 20, 21; 2 Story's Eq. 10, 14.

There can be no distinction in principle between an instrument originally void and one which has become invalid or has been discharged by events subsequent to its execution. In either case the instrument would have no just and legal existence. The ground upon which the court interferes, being to prevent a fraudulent or improper use of the instrument, and to give security against unjust future litigation upon it. The same reason must apply with equal force to both cases. 2 Sto. Eq. 14.

The next ground of demurrer which I shall notice, is that which alleges the bill to be multifarious, there being a supposed misjoinder as to the defendants. Although a plaintiff in equity cannot demand by one bill several matters of different natures

against several defendants, yet when one general right is claimed by the bill, although the defendants may have separate and distinct rights, a demurrer will not hold.    Milf. Pl. 181, 182.    Here the several notes which the complainant claims to have delivered up by reason of their having been paid, were all made by the complainant and others, and all payable to the Mississippi and Alabama Railroad Company.    The defendants obtained the notes from that bank.

It is also alleged that a payment was made to the Mississippi and Alabama Railroad Company by Anderson, which was intended equally for the satisfaction of all the notes.    This statement of the case places it clearly within the rule above laid down.

The demurrer must be disallowed,