## SCRUGGS *vs.* DRIVER'S EXECUTORS.

[BILL IN EQUITY FOR RESCISSION OF CONTRACT.

1. *Revocation of agency by death.*—An agent's authority, under a written power of attorney, to make a contract for the sale of his principal's distributive interest in an unsettled estate, is revoked by the death of the principal before the completion of the contract.

2. *Authority of one of several co-executors.*—One of two joint executors cannot, without the concurrence of his co-executor, create a pecuniary liability against their testator's estate, by a contract for the purchase of property; nor are the admissions of one executor sufficient to establish such contract as against the estate.

3. *Rescission of contract on ground of mistake.*—A contract of sale, made by an agent after the revocation of his authority by the death of his principal, will be rescinded in equity, at the instance of the purchaser, when both parties acted in ignorance of the principal's death.

4. *Cancellation of notes for purchase-money.*—In rescinding a contract, at the instance of the purchasers, who acted in their representative character as executors, on account of a mutual mistake of fact which rendered it void, a court of equity will order the cancellation of the negotiable notes given for the purchase-money, notwithstanding there is a complete defense at law against them.

5. *Extent of relief in equity.*—On bill filed by a purchaser, for the rescission of a contract on the ground of mistake, and the cancellation of the outstanding notes given for purchase-money, the jurisdiction of equity having once attached, the court will go on and do complete justice between the parties, although there is an adequate remedy at law to recover a portion of the purchase-money already paid.

6. *Jurisdiction of equity over foreign executors.*—Where foreign executors file a bill in the chancery courts of this State, against the personal representative of their testator's widow, asking the rescission, on the ground of mistake, of a contract by which they purchased the widow's interest in their testator's estate; and it appears that, although the widow never received her full distributive share of the estate, there is no danger of loss to the defendant if remitted to the foreign jurisdiction for its recovery, and that there are no assets of the estate in this State,—the court will not entertain a cross bill to compel the plaintiffs to account for such distributive share.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. JOHN FOSTER.

THE bill in this case was filed by Giles L. Driver and William R. Hunt, executors of the last will and testament of Eli M. Driver, deceased, against James H. Scruggs, as executor of the last will and testament of Mrs. Julia S. Driver, who was the widow of said E. M. Driver; and sought the rescission of a contract, by which plaintiffs purchased from said Scruggs, acting as the agent of Mrs. Driver, her dower and distributive interest in the estate of her deceased husband, the recovery of that portion of the purchase-money which had been already paid, and the cancellation of the unpaid notes which had been given for the residue. It alleged, that said E. M. Driver died, at his residence in Shelby county, Tennessee, in October, 1851, leaving real and personal estate in the States of Tennessee and Mississippi; that his will was duly admitted to probate in Tennessee and Mississippi, and letters testamentary granted to complainants, who qualified and accepted the trust; that the widow dissented from the will, and claimed her dower and distributive share of the estate; that on the 10th February, 1853, before the widow's dower and distributive share of the estate had been allotted to her, said James H. Scruggs, acting as her agent and attorney in fact, entered into a written contract with complainants, by which, in consideration of the sum of $27,066, he sold and transferred to them her dower and distributive interest in said estate; that the purchase-money was paid, or secured to be paid, partly in certain slaves, a carriage and horses, and household furniture, partly in a bill of exchange on New Orleans, and the

residue in two promissory notes; that the slaves and other property were delivered, the bill of exchange negotiated, and the two promissory notes executed and delivered, in pursuance of the contract; that this contract was made in Memphis, Tennessee; that Mrs. Driver, at the time it was entered into, was in fact dead, having departed this life on the 9th February, 1853, in Florida; that her death was then unknown to both parties, and the contract was entered into by them under the belief that she was still living. The prayer of the bill was, that the contract might be rescinded, and the promissory notes canceled; that the defendant might be required to refund the money received on the bill of exchange, to deliver up the property received under the contract, and to account for the hire of the slaves; and the general prayer, for other and further relief, was added.

The defendant filed an answer to the bill; admitting the death of E. M. Driver, the probate of his will, and the widow's dissent therefrom, as alleged in the bill; admitting, also, the death of Mrs. Driver, (but not that she died on the day stated in the bill, of which fact proof was required,) and that defendant was her executor; admitting, also, that Mrs. Driver's dower in the lands of her deceased husband had never been allotted to her, but alleging that her distributive share of the personal property in Mississippi had been assigned to her, by commissioners appointed by the probate court, before her death. In reference to the contract set out in the bill, the answer admitted that the writings were signed on the 10th February, but averred that the contract was made and completed before that day; that during the first week of January, 1853, defendant, as the agent of Mrs. Driver, sold to complainants her dower interest in her husband's estate, for $5,000, and her distributive share of the personalty at valuation; that pursuant to this contract, commissioners were appointed by the probate court in Mississippi, who allotted to Mrs. Driver, as her distributive share of her husband's estate, certain slaves and a sum of money; that the personal property in Tennessee was carried by complainants to Mississippi, in order that it might be

included in the valuation there made, and was included in the estimate made by the commissioners; that the action of the commissioners was reported to the probate court, and was in all things confirmed; that the parties then went to Memphis, to ascertain the debts due to the estate, and Mrs. Driver's portion thereof, which they there ascertained; and that all this was done prior to the 10th February, 1853, when the notes and other writings were executed. The answer further alleged, that the cotton crop of 1852, and certain railroad stock held by said Driver, were not included in the valuation of personal property made by the commissioners as aforesaid; and that neither Mrs. Driver, nor the defendant as her executor, had ever received any portion thereof. It was prayed that the answer might be taken as a cross bill; that, if the writings should be set aside, the parol contract might be specifically enforced; or that the complainants might be compelled to account for and deliver Mrs. Driver's distributive share of the estate, deducting the value of the property received by the defendant. The answer also contained a demurrer to the bill, for want of equity, and because complainants had an adequate remedy at law.

The chancellor overruled the demurrer, and, on final hearing, rendered a decree for the complainants; ordering the rescission of the contract, the cancellation of the notes, and the refunding of the $5,000 received on the bill of exchange; but allowing the defendant to retain, not under the contract, but under the decree of the probate court of Mississippi, the property specifically allotted to Mrs. Driver by the commissioners.

The decree of the chancellor is now assigned as error.

ROBINSON & JONES for the appellant, made these points:

1. Taking all the allegations of the bill to be true, the complainants have a clear and undisputed right to recover back, by action at law, the money paid on the bill; and when this clear legal right is shown, equity will not afford relief.—Huey v. McElroy, 5 Porter, 165; Bibb v. McKinley, 9 Porter, 649; Chandler v. Faulkner, 5 Ala. 567; Crayton v. Johnson, 27 Ala. 506.

2. The bill does not make out such a case as will justify the cancellation of the notes. It does not charge that the notes are negotiable, and, therefore, liable to abuse; nor that the defense at law is at all difficult or uncertain; nor that a discovery is necessary in aid of that defense. But, on the contrary, it admits that the complainants got possession of Mrs. Driver's share of her husband's estate under their purchase, that they still hold it, and are in no danger of losing it. A purchaser certainly cannot, in equity, have his note for the purchase-money canceled, and yet hold on to the property for which it was given.—Willard's Equity, 302; 3 Vesey, 368; 5 Vesey, 286; 10 Paige, 340. The jurisdiction of equity to cancel securities is one of its extraordinary powers, and is only exercised when shown to be just, expedient, and highly proper. The court has a discretionary power in such cases. The question is, not what the court *must* do, but what it *may* do. It requires a clearer and stronger case to induce the court to order a cancellation, than to grant a specific performance.—Hamilton v. Cummings, 1 Johns. Ch. 523; Piersoll v. Elliott, 6 Peters, 98; 3 Cowen, 445.

3. Admitting the sufficiency of the allegations of the bill, are they sustained by the proof? The main fact, on which the whole equity of the bill depends, is the death of Mrs. Driver on the 9th February. The deposition of Mrs. Scruggs, which was taken to prove this fact, leaves it uncertain whether she died on the 9th or 10th of February. As her death took place in Florida, when the defendant was in Tennessee or Mississippi, the answer, even if considered evasive, cannot be treated as an admission of the fact charged.—Savage v. Benham, 17 Ala. 132. The defendant's statement to the witness Thompson, that Mrs. Driver died on the 9th February, is not shown to have been made after he had qualified as her executor; consequently, it cannot be received to affect the interests of her estate. Moreover, it is evident that he spoke from rumor merely, and not from personal knowledge; amounting to no more than this, that he had heard she died on the 9th. The proof, then, leaving it doubtful whether the death occurred on the 9th or 10th, is insufficient to

authorize a cancellation of the notes.—Aday v. Echols, 18 Ala. 355; 2 Story's Equity, § 764.

4. If the action of the chancellor in canceling the notes can be sustained, was he right in ordering the repayment of the $5,000 paid on the bill given for the right of dower? If the defendant's authority was determined by the death of his principal on the 9th February, the subsequent acts and admissions of the parties can have no effect on the rights and contracts then existing; and the other proof must be looked to, in ascertaining the state of things then existing. Hunt, in his letter dated on the 4th February, says, "We have bought Mrs. Driver's right to dower in the lands, for $5,000. We have just concluded a division of the estate. Mrs. D.'s share amounts to $20,000." The proof shows that, in using the word "*we*," Hunt referred to himself and Driver; and that Driver afterwards ratified his acts. This ratification binds Driver as firmly as though he had originally given Hunt authority to act, and may be shown by the same kind of testimony.—Reynolds v. Dothard, 11 Ala. 531; Clealand v. Walker, 11 Ala. 1058; Wood v. McCain, 7 Ala. 800. This establishes the position, that Hunt and Driver, as executors, bought the right of dower; and if any written memorandum was required, this letter was sufficient, to take the case out of the statute of frauds.—2 Phil. Ev. (Cowen & Hill's Notes,) 84, 85; Sugden on Vendors, (7th ed.) 84; 3 Atk. 503; 6 East, 507; 9 Vesey, 351; 1 Humph. 325.

5. No written memorandum was necessary to the validity of the contract for the purchase of the dower-right. The words of the Tennessee and Mississippi statutes of fraud only prohibit parol sales of "lands, tenements, and hereditaments." A right to dower is neither lands, tenements, nor hereditaments. Before assignment, it is neither an estate, nor an interest in lands; but a mere right to have something done—a chose in action merely. 4 Kent's Com. 61, 62; 7 Johns. 246; 17 Johns. 168; 6 Ala. 874; 19 Ala. 372; 18 Ala. 813; 1 Sm. & Mar. Ch. 474. A widow may bar her right to dower by acts which have never been held to pass an estate in lands; and if it may be thus barred, why may it not be released by parol?

5 Monroe, 518; 6 Johns. Ch. 195, 200, and cases cited. Suppose Mrs. Driver was now applying for her dower, and it was made to appear that she had entered into, and partly executed by the receipt of the money, the contract here proved; would it not be a good bar in equity, if not at law?

6. The bill is filed against Scruggs as executor of Mrs. Driver. To establish their case, the complainants must show a liability created by the testatrix herself in her lifetime, and cannot make her estate responsible for an act done by Scruggs after her death.

7. The complainants sue as executors of Driver, and ask relief in reference to a contract made by them, as such executors, under a power in the will, for the benefit of the estate. To allow them now to treat either demand as their individual property, would render the bill multifarious.—1 Dan. Ch. Pr. 397, and cases cited in note.

8. If the allegations of the bill be true, Driver's legatees might refuse to allow these executors a credit for the $5,000 paid by them; and being guilty of a *devastavit*, they cannot recover the money.—Pistole v. Street, 5 Porter, 70; Hopper v. Steele, 18 Ala. 828; Swink's Adm'r v. Snodgrass, 17 Ala. 653.

9. If the chancellor's decree on the points above discussed should be sustained, then the question comes up, whether the court will not impose some terms on the complainants. It is an old maxim, that he who seeks equity, must first do equity; and if there is anything that good conscience requires the plaintiff to do for the defendant, the court will compel him to do it.—2 Story's Equity, § 709; 5 How. (U. S.) R. 192; 1 Strobh. 356; 7 B. Monroe, 571; 1 Johns. Ch. 367; 5 Johns. Ch. 122. In this case, the whole of Mrs. Driver's share of her husband's estate, except the specified personal property allotted to her, passed to, and vested in Hunt and Driver.—3 Humph. 542; 3 Yerger, 281; 3 Ala. 679; 18 Ala. 648. Hunt and Driver, then, have taken the whole of her distributive share, and can hold it against any claim she may hereafter make. They have got all they contracted for, and still hold it. They owe her a debt, which was evidenced by

the notes ordered to be canceled. If the notes are canceled, the appellees ought to be required to pay the debt evidenced by them. The condition in which the parties are thus left, shows the error of the decree. The appellees get all they ask, and the appellant is left without remedy. If he sues for the purchase-money, he is met by this decree declaring the sale void. If he seeks an allotment of the distributive share of his testatrix before the probate court, he is met by the former decree of that court, sustaining and sanctioning the allotment already made. The chancellor allowed him to keep the negroes, because the probate court had allotted them; but required him to refund the money which had been allotted to him by the same decree. The decree of the probate court was a unit, and, if a part of it be good, the whole must stand until reversed. The court had jurisdiction of the property, and of the persons before it; and its action cannot be thus set aside for mere errors or irregularities.—Campbell v. Wyman, 6 Porter, 219; Robinson v. Campbell, 6 Porter, 269; McCartney v. Calhoun, 11 Ala. 117; 8 B. Monroe, 112; 1 How. (Miss.) R. 450. Moreover, the parties consented that money might be allotted instead of property; and that gave the court jurisdiction, if it had it not before.

10. The ruling of all the foregoing points against the appellant will make it necessary to consider the case made by his cross bill, in which he sets up an executed contract, except the reduction to writing, and asks its specific performance. That it is competent for him to do this, see Story's Eq. Pl. §§ 317, 399; Goodwin v. McGehee, 15 Ala. 232; Nelson v. Dunn, 15 Ala. 91. That the contract is proved, as to Hunt, is not denied; and Driver's connection with it is established by the proof, already referred to, showing that Hunt acted for him, and that he ratified Hunt's acts. For the power of the court to enforce a specific performance of such a contract, see 3 Atk. 384; Willard's Equity, 273-79; 1 Sim. & Stu. 607; 2 Barb. S. C. 608; 1 How. (U. S.) R. 304; 1 Wheaton, 152.

11. If the proof should be held insufficient to authorize a decree for the specific performance of the contract, the

cross bill must be sustained for the purpose of compelling the plaintiffs to deliver the residue of Mrs. Driver's distributive share of her husband's estate, which the proof shows she did not receive. In doing this, the court is asked, not to take jurisdiction over Driver's property in Mississippi, but to act *in personam*. The answer filed to the cross bill was a submission to the jurisdiction of the court, and it had power to compel the delivery of any property in the possession of the parties.—1 Barb. Ch. Pr. 77; Stapler v. Hurt, 16 Ala. 799; Harrison v. Mock, 10 Ala. 196. That the property is not in this State, is no objection to the relief prayed against the parties who have it in their possession, and who are before the court. Leading Cases in Equity, vol. 2, part II, 312, and cases cited; 2 Story's Equity, §§ 743, 733; Story's Equity Pleadings, § 489.

12. If all the foregoing points should, by possibility, be decided against the appellant, then it is submitted that the court should, at least, so modify the chancellor's decree as to enjoin the appellees from setting up the distribution heretofore made in bar of any future proceedings for the balance of Mrs. Driver's distributive share.

WALKER, CABANISS & BRICKELL, *contra.*—1. The contract for the sale of Mrs. Driver's dower was not reduced to writing until after her death, and the prior parol agreements were within the statute of frauds. It is doubtful, whether a letter to a third person can, under any circumstances, take a case out of the statute of frauds.—Roberts on Frauds, 106; 2 P. Wms. 64. But, admitting that such a letter may sometimes be sufficient, Hunt's letter in this case is, under all the authorities, insufficient in several particulars. The subject-matter of the sale is imperfectly described, and the parties are not designated with sufficient certainty.—Story on Contracts, § 785; 3 Johns. 399; 7 Porter, 73; 5 Barn. & Cres. 583; 2 Kent's Com. 661; 2 Greenl. Cruise, 51–55; 1 Sugden on Vendors, 118, note 2; 2 Sup. U. S. Digest, p. 59, §§ 706, 708, 712, 725–6; 3 Atk. 563; 1 Atk. 12; 11 Vesey, 550; 2 P. Wms. 64; 9 Mod. 3; 2 Mees. & W. 653. Nor is the

letter signed by the parties to be charged. The executors were the parties to be charged; while the letter is signed by one of them only, and in his individual capacity. A power to executors must be executed by all who qualify. 1 Sugden on Powers, 222; 1 Lomax on Ex'rs, 357, 362; 4 Monroe, 580; 4 Hen. & Mun. 444; 6 Paige, 52. The executors are made trustees by the will, and it was necessary for all to join in any disposition of the trust property. Hill on Trustees, 305; 8 Cowen, 544; 11 Barb. 527; 6 Barr, 267; 5 Wend. 558. It is clear, moreover, that the money was not paid on the original parol agreement, nor upon this letter of Hunt's, but upon the written contract which was signed on the 10th February. The money was not paid until after the deed was executed, when there was no parol agreement in existence on which it could have been paid, for the agreements were merged in the deed.—10 Ala. 548; 1 John. Ch. 273; Smith on Contracts, 77, 82; 8 Johns. 506; 10 John. 299. Mrs. Driver being dead when the deed was executed, the contract of sale was invalid, the thing intended to be sold having no existence.—2 Kent, 694; 11 Peters, 63; 1 Story's Equity, §§ 142, 143, 160–63.

2. Scruggs's power of attorney, not being a power coupled with an interest, was revoked by the death of his principal before the execution of the power.—2 Kent, 645; American Leading Cases, 415; 2 Mason, 244; 8 Wheat. 174, 203; 1 Humph. 294–99. Conceding, then, that the money was paid under the parol contract, the plaintiffs show a clear right to recover it back; because the defendant was unable to convey, 1st, on account of his want of authority after the death of his principal; and, 2dly, because the subject-matter of the contract had ceased to exist.

3. The equity of the bill consists, also, in the fact that the plaintiffs' notes, although void for want of consideration, may at any time be made the basis of a suit at law; their invalidity not appearing on their face.—6 How. (Miss.) R. 123; 2 Story's Equity, § 700; Elliott v. Piersoll, 6 Peters, 95; 6 Barbour, 605; 1 Johns. Ch. 520. That the contract was entire, and must be sustained or avoided

in whole, see Story on Sales, 240, 245; 2 Story's Equity, § 778.

4. The cross bill cannot be maintained, in either aspect. A specific performance will not be decreed, where it is doubtful whether an agreement has been concluded or is a mere negotiation.—14 Peters, 77; 1 Wheaton, 341; 4 Porter, 297. Where administration has been rightfully granted in another State, and is there pending, a court of chancery will not take jurisdiction, at the instance of the distributees, to compel a final settlement of the administration, but will remit the parties to the foreign tribunal. Worthy v. Lyon, 18 Ala. 784; Story on Conflict of Laws, 431.

WALKER, J.—The defendant's declaration, proved in Thompson's deposition, is sufficient evidence that Mrs. Driver died on the 9th February, 1853. The probability that the defendant, who was Mrs. Driver's attorney in fact, and her brother, and the executor of her will, was correctly informed as to the date of her death; the fact that there is nothing in the proof conflicting with the correctness of the admission, and that there is no perceivable reason for distrusting the memory or veracity of the witness, authorize the estimate of the declaration as reliable evidence. Mrs. Driver's death on the 9th February, 1853, operated an instantaneous revocation of the power conferred by her letter of attorney on the defendant. The defendant's agency cannot be classed with any of the exceptions to the general rule, either established, or suggested as reasonable and just in the law-books.

If the contracts described in the pleadings were made on the 10th February, 1853, the next day after Mrs. Driver's death, they were void, for the defendant's agency was terminated on the preceding day. The contract was committed to writing on the 10th day of the month. On that day the defendant, for Mrs. Driver, executed a conveyance of her dower and share as distributee in the estate; and the complainants executed written evidences of their promises to pay the purchase-money. It is contended that an unwritten contract, identical with that

committed to writing on the 10th February, existed previously to that day, which, being complete before the expiration of the defendant's agency, was not annulled by the act of afterwards committing it to writing.    Two plantations, with slaves and other personal property upon them, belonging to the complainants' testator, were in different counties in the State of Mississippi; and the residence of the testator belonging to the estate was in Memphis, Tennessee.    The evidence discloses that, on the 6th January, 1853, Hunt, one of the executors, and the defendant, were together on one of the plantations in the State of Mississippi, and had a valuation made of the personal property belonging to the plantation, and some house servants and other property that had been carried to the plantation from Memphis, by commissioners who were appointed by the probate court of the county in which the plantation was situated, to allot to Mrs. Driver her dower, and apportion to her her share of the personalty.    Those commissioners, besides valuing the property, allotted to Mrs. Driver several slaves and a carriage and horses, at a fixed value.    On the 28th January, 1853, Hunt and defendant had a similar valuation of the personal property on the other plantation in Mississippi made by commissioners appointed by the probate court of the county.    These last named commissioners assigned to Mrs. Driver another family slave at a certain value.    Hunt and the defendant then went to Memphis, dispatching a messenger to the complainant Giles L. Driver, with the request that he should meet them in Memphis.    Giles L. Driver received the message, and met Hunt (his co-executor) and the defendant in Memphis on the 3d February, 1853.

It appears from the evidence, that Hunt declared, pending the proceedings at the two plantations in Mississippi, that *he* had bought Mrs. Driver's dower in the lands of her deceased husband, at five thousand dollars in cash, and her interest in the personal property at valuation, and her share in the choses in action of the estate; and that she was to take the house servants, and the carriage and horses, which were valued, at the estimate of the com-

missioners; that he (Hunt) was to have one and two years on the debt for the share in the personal property; and that they were to go to Memphis and ascertain the amount of Mrs. Driver's share of the debts due the estate. There is no proof that the complainant Giles L. Driver knew anything of the proceedings and negotiations between Hunt and the defendant, until he was reached by the messenger sent to obtain his attendance in Memphis. When informed by him of the arrangement entered into between Hunt and defendant, he neither assented nor dissented. After arriving at Memphis, the three (the two complainants, and the defendant) entered upon an examination of the debts of Driver's estate, with a view to the ascertainment of the amount of Mrs. Driver's share of them, after an allowance for the payment of the debts against the estate. This examination was continued up to the 10th February, 1853, when the contracts described in the pleadings were signed.

On the fourth of February, Hunt wrote a letter from Memphis to one W. Scruggs, from which we make the following extract: "We have just concluded a division of the estate. Mrs. D.'s share of the personal property amounts to $20,000, of which she takes in negroes, &c., $10,000. We purchased her dower interest in the lands unsold at Mr. Driver's death, for $5,000. Her share in the notes, crops, &c., I do not think will amount to more than $2,500 or $3,000. We have not quite closed the last matter yet. Your brother will leave for Huntsville in a few days. I let him have the carriage and horses for $650—a mere song."

After a careful study of the foregoing testimony, we have attained the conclusion, that the contract between the parties was never completed, until the writings were executed on the 10th February, 1853. In the first place, the evidence does not show that Giles L. Driver, one of the executors, assented to the contract until that time. The concession that the contract was assented to by one of the executors before the 10th of February, will not aid the defendant, because it is not competent for one of the representatives of the estate, without the concurrence of

another, to create against it, and fix upon it, by a contract for the purchase of property, a pecuniary liability. It has been twice decided in this State, that one of several executors or administrators cannot revive a debt barred by the statute of limitations.—Pitts v. Wooten's Executors, 24 Ala. 474; Caruthers v. Mardis, 3 Ala. 599. These decisions are placed upon the ground, that it is not permissible for one executor or administrator, by his promise or admission, to impose a personal liability upon his co-executor or co-administrator, without the knowledge or assent of the latter; *which* would result, if a judgment against the representatives of an estate, operating as an admission of assets, could be rendered upon such promise or admission.

It is true, that several executors or administrators are regarded, for most purposes, as one person; and therefore the acts of each, in relation to the regular administration of the estate, such as the sale, delivery, and possession of the goods of the estate, the release and discharge of the debts due to the estate, &c., are deemed the acts of all. Stuyvessant v. Hall, 2 Barbour's Ch. R. 151–160; Herald v. Harper, 8 Blackf. R. 170; Rick v. Gilson, 1 Penn. State R. (Barr) 54; Wheeler v. Wheeler, 9 Cowen, 34. But a different rule prevails as to those acts which may affect the personal responsibility of the several representatives of the estate. One executor could not subject the estate to a judgment, upon his promises to pay for property purchased by him, without the participation of his co-executor; for, if he could, he might fasten a personal liability upon his co-executor, without the consent or knowledge of the latter. Upon this principle, the authorities fully recognize, as a general rule, the doctrine that one executor or administrator cannot create a debt against an estate, where none existed before.—Hall v. Boyd, 6 Barr, (Penn. State R.) 267; James v. Hackley, 16 Johns. 273; Hammon v. Huntley, 4 Cowen, 493; Forsyth v. Ganson, 5 Wend. 558; McIntyre v. Morris, 14 Wend. 90.

The question of the admissibility and effect of admissions by one representative, in suits against all of them, designed to charge the estate, has been very carefully and

fully considered in the cases of James v. Hackley, Hammon v. Huntley, Forsyth v. Ganson, and McIntyre v. Morris, above cited from the New York Reports. In the case of James v. Hackley, where one administrator had acknowledged a certain balance to be due on a debt of the intestate, it is intimated that the admission was, *prima facie*, evidence against both administrators; but that its correctness might be controverted. In the other three cases, it is expressly decided, that the estate cannot be charged upon the admission of a part of the executors or administrators. To the same effect, also, is the decision in the case of Hall v. Boyd, *supra ;* and the principle of those decisions seems to be fully recognized by this court, in the cases which hold that the promise of one executor or administrator will not revive a debt barred by the statute of limitations. It is not necessary for us in this decision to define the cases in which the admissions of any one or more of the representatives of an estate are evidence against all. Confining ourselves to the point necessarily arising, we merely deny that a charge against an estate can be established by the mere admission of a part of the executors or administrators.

From the principles above laid down it follows, that the contract described in the pleadings, which would create a large new liability against the estate, could not be made by Hunt, one of the executors, alone, and could not become the contract of the executors, binding the estate, until it received the assent of Giles L. Driver, the other executor; and that the contract cannot be established by the mere admission of Hunt, one of the executors. If it be conceded that the letter of Hunt, dated 4th February, 1853, shows that the contract was then complete, (which we are not prepared to admit,) it would not be sufficient to establish the contract charging the two executors representing the estate, because it is the naked admission of one executor. Besides this letter, there is no proof that Giles L. Driver ever asssented to the contract, until the papers were executed on the 10th February. In the absence of proof to the contrary, we must regard the execution of the papers as the consummation of the con-

tract.   Whatever agreement or stipulations may have been previously made by Hunt, they could not make a contract by the executors of Driver.   The liability of the executors, representing the estate, attached when the two united in giving their assent to the contract, and not sooner.   There is no proof of such united assent until the 10th February, when the authority of the defendant had terminated.

The contract was executed under a mutual mistake as to the existence of the defendant's authority, and as to the existence of a right to dower in Mrs. Driver, and could not be binding on either party.   The complainants have a right to recover back the money paid on the bill of exchange drawn by them, and to prevent the collection of the notes given by them.—Hitchcock v. Giddings, 5 Price, 135; Trippe v. Trippe, 29 Ala. 637.

We concur with the chancellor, that the defendant has made out a title to the slaves, and carriage and horses, independently of the contract, as an allotment to Mrs. Driver of a part of her distributive share of the estate of her deceased husband, which she takes at the valuation of the commissioners appointed by the Mississippi probate court.

We have not noticed the question of the effect of the statute of frauds, so much pressed in the argument of counsel.   The contract was made in another State; and it is not averred in the original bill that there exists in that State any statute requiring conveyances of land to be in writing; and there is no proof in the transcript of any such statute.   The complainants must, therefore, be denied the benefit of any conclusion favorable to them as complainants in the original bill which might have been drawn from that statute.

There are other considerations, conducing to show that there was no complete contract between the parties until the 10th of February; but we omit to notice them, because the view which we have taken is conclusive of that point in the case.

It is contended for the defendant, that the complainants have a complete remedy at law, by an action to recover back the purchase-money of Mrs. Driver's dower, and by

defense at law against the notes when sued upon. The assumption in this argument, that the complainants could recover the money paid by action at law, and that they could upon the facts alleged successfully resist a suit upon the notes, is undoubtedly correct. But the complainants are not bound to wait until the defendant may choose to institute suit upon the notes. The notes are negotiable by endorsement under the laws of this State, notwithstanding they may have been made in another State. Wilkerson v. Rutherford, 29 Ala. It is inferrible that the notes do not, upon their faces, disclose the want of consideration, but appear to be valid and binding securities. The delay in the determination of the question whether those notes are valid evidences of debt against the estate, must necessarily tend to embarrass the administration of the estate. The effect of a postponement of that question, until the period prescribed by the statute of limitations might approach completion, would probably be detrimental to the interests of the estate, and might injuriously affect the legatees. In the case of Hamilton v. Cummings, 1 Johns. Ch. 520, Chancellor Kent held, that the chancery court would not take jurisdiction in every case for the purpose of canceling a security for the payment of money, but that judicial discretion must, upon the circumstances of each case, determine the question.—Elliott v. Piersoll, 6 Peters, 95; 2 Story's Eq. Juris. § 700.

Adopting the principle above quoted from the case of Hamilton v. Cummings, we decide, that the bill and proof make out a case proper for the exercise of the preventive jurisdiction of the court to cancel the notes. We have been able to find no case, with such features as are found in this, in which the jurisdiction has been denied. The case of Hitchcock v. Giddings, 4 Price, is one in which the power of cancellation was exercised under circumstances not so strong as those of this case, although strikingly similar. See, also, Sessions v. Jones, 6 How. (Miss.) 123; Garrett v. M. & A. R. R. Co., 1 Freem. Ch. 70; Main v. Garner, 1 Martin & Yerger, (Tenn.) 383; Castor v. Mitchell, 4 Wash. C. C. R. 191.

The court, having jurisdiction to cancel the notes, will go on and do complete justice, by granting the complainants all the relief to which they are entitled, notwithstanding there may be an adequate remedy at law as to a part.—Stow v. Bozeman, 29 Ala. 397; 1 Story's Equity, § 71; Cathcart v. Robinson, 5 Peters, 263; Miller v. McCan, 7 Paige, 451.

Conceding that the complainants have a remedy at law, in an action of assumpsit, to recover the money paid for the widow's dower, the court, in our opinion, properly granted relief as to that matter, as it had jurisdiction upon an independent ground, and, by doing so, would render complete justice without an additional suit. There must be, however, a limit to the doctrine, that the jurisdiction over one subject of litigation may bring within the grasp of the court another matter of legal cognizance. Jurisdiction over one subject would not give the court control over a separate matter not connected with it. Such, however, is not the case here. The negotiations for the sale of the widow's dower, and of her share in the personalty, commenced together, and proceeded *pari passu;* and the sale of the two interests were finally consummated by the same writing. They are both parts of the same transaction, and the evidence conduces to show that the one would not have been made without the other. The same facts constitute the complainants' claim to relief as to both matters. Under such circumstances, we think that the chancellor properly granted relief as to both matters.

The two decisions of Worthy v. Lyon, 18 Ala. 784, and Calhoun v. King, 5 Ala. 523, are, perhaps, not altogether reconcilable. But whether we adopt the one or the other as a correct exposition of the law, we have an authority conclusive against the maintenance of the cross bill, as an application for the distributive share of Mrs. Driver in the personal estate of her deceased husband. The complainants are executors, qualified before the courts of other jurisdictions, in which the administration of the estate and the execution of the will are pending; and there does not appear to be any administration or assets

in this State, or any danger of loss to the defendant, if remitted to the foreign jurisdiction for the recovery of the distributive share of his testatrix.

The chancellor properly rescinded the contract of 10th February, 1853, *in toto;* which leaves the defendant to prosecute his claim to the share of his testatrix in the estate of her deceased husband, unembarrassed by the contract. Whatever rights the defendant may have under the statute of distributions, or under the decrees of the probate courts of Mississippi, are left unaffected by the contract. Such is the result of the chancellor's decree.

The decree of the chancellor is affirmed, at the costs of the appellant.

